32495. VAUGHN *v.* THE STATE.

DECIDED JULY 16, 1949.

*Wesley R. Asinof, Sam Green Jr.*, for plaintiff in error.

*Paul Webb*, Solicitor-General, *William Hall, C. O. Murphy, Robert A. Blackwood*, contra.

MacIntyre, P. J.   There was ample evidence authorizing the jury to find that the corpus delicti was established for both the offenses charged in the indictment. There was testimony that the check was stolen from the payee, James A. Ellis, that the endorsement of the payee's name thereon was a forgery, and that, bearing this forged endorsement, the check was cashed by the prosecutor, Leo R. Amiel. The sole question remaining for determination is whether there was sufficient evidence connecting the defendant with the perpetration of the offense of uttering, passing, or tendering in payment the forged check. The question of connecting the defendant with the forging of the check is eliminated, as the jury found him not guilty of that offense in spite of the testimony of a handwriting expert that

the endorsement on the check was made by the defendant. The only other testimony tending to connect the defendant with passing the forged instrument is as follows: James A. Ellis testified: "I am a Southern Railroad pipe fitter's helper. My occupation was that of a pipe fitter's helper on the 15th day of April 1948. . . Something unusual happened on that date. My check was stolen. . . I got the check after 7 o'clock and put it in my cupboard. That cupboard was located in the pipe shop there at the coach yard . . on North Avenue. . . I put the check in my cupboard just as quick as I come on back up to the coach yard after I got the check. I missed it that evening when I went to get it at, I will say, seven or eight minutes until 3. I know the defendant in this case, James T. Vaughn. . . I saw him that day there at the pipe shop. . . I saw him there when I first came in, about ten minutes until 7, and after 7, too. When I saw him after that I would say that was about five minutes after I put my check in my cupboard. After that we went on out in the yard checking cars. I have known the defendant, James T. Vaughn, about six years. He did work for the Southern. On the 15th of April he was working for the Southern Railway Company. He was a pipe fitter. I can identify the paper which you show me that is marked State's exhibit 1. It is a pay-roll check made payable to me. . . That is the check I had that day. It is dated March 31st. I got that check the 15th of April. We usually get checks fifteen days after they are made. . . There are several lockers in that room. There are four. They have locks on them. Each cupboard or locker has a separate lock. I just used one locker and Frank Noland uses one and Charlie Lambert uses one and there is another one there that Mr. Vaughn and them used. It is right beside mine. . . Anyone can walk in during the day. I do not know how many people were in there that day while I was working. . . . Mr. Vaughn did not work that day." Frank A. Noland testified for the State: "I know the defendant in this case. . . I was working at the Southern Railroad on the 15th of April, 1948. I saw these two men [Ellis and Vaughn] on that day. I saw them in the pipe shop a little after 7." Leo R. Amiel, the prosecutor, testified: "I run a retail liquor store. My place of business is located at

46 Marietta Street. You ask me where that is in relation to the Southern Railroad pipe fitter's shop. . . It is about three miles, three or four miles. . . I know the defendant in this case. . . I was operating that place of business on the 15th day of April 1948. I saw the defendant on that date at about 8:30; I would say 8 o'clock in the morning or 8:15, between 8 and 8:15. He came to my store to cash his check. There was someone with him. I do not know who was with him. I cashed a check for Mr. Vaughn. I cashed his check first. I cashed another check that morning when he was there. I can identify the check which you show me marked State's exhibit 1. [State's exhibit 1 is composed of two photostatic copies, one showing the face of a Southern Railway Company pay draft No. 10121, dated March 31, 1948, in the amount of $128.73, payable to the order of James A. Ellis, the other showing the reverse side of the pay draft bearing the endorsement, James A. Ellis, below which is the endorsement of Leo R. Amiel, and also there appears the stamp of the Citizens & Southern National Bank and Atlanta Clearing House bearing date of April 15, 1948.] *That is a check that Mr. Vaughn gave me, I mean asked me to cash for his buddy.* You ask me to tell this jury the circumstances that went on there during the time these people were there. I had known Mr. Vaughn previous. I have cashed three or four checks for him. He came in that morning and that was before the banks opened up. We opened up at 8 o'clock. He came and said he was in a hurry. He came with another man. He asked me to cash his check and so I cashed his check. Then he asked how about cashing my buddy's check. So I looked at it and I said, 'That is too much money right now. I don't have that much, to cash both checks.' So he said, 'Well, he needs it.' So I said, 'Well, the bank will open up at 9 o'clock.' That was about 8 o'clock. I said, 'All right, I will cash it.' He said he wanted to buy a half pint. So I handed it to him. He says, 'Cash the check for my buddy.' So I said, 'All right, I will cash it.' So that is all that happened. They entered my place of business together and they left together. *I do not know who wrote the name James A. Ellis on this check which you show me marked State's exhibit 1. That was on the check when I first got it.* This other signature on here is my signature. You

ask me what I did with this check. I sent the boy down to the bank and got it cashed at 9 o'clock, when the bank was opened so I could have some money. The next time I saw this check was when I got it from Mr. Setzer who is with the Southern Railroad. *This defendant did not make any statement as to the validity of this check in my presence, whether it was good, or not.* I knew that it was a Southern Railroad check, that it ought to be good. I mean I asked him if he knew this man and he said it was his buddy. I did not turn this check over to anybody. I got it back from the bank. After I got it back from the bank the Southern Railroad policeman came by and started investigating it and asked me if I knew Frank Ellis and I said 'No.' I turned the check over to them for the purpose of investigation and then they later returned it." On cross-examination Amiel testified: "It was probably over a month or so from the time that I cashed this check until it came back from the bank. When it came back from the bank I didn't know at that time just how long it had been since I had cashed that particular check. I knew I went down and deposited the check on April 15. I remember that I deposited both of them on the 15th day of April. No, excuse me, sir, I don't mean deposited. I remember going to the bank, sending it down to get the money. I remember sending to the bank and getting the money. You ask me how long I have been knowing the defendant. . . I cashed about three checks for him previously. Two or three, over about three months or four months. The only ones I recall cashing was just about three or four. I have never heard of Mr. William Dryden. I don't know Mr. William Dryden. I cashed many Southern Railway pay checks just like that. I am acquainted with the persons whom I cashed checks for. I say I do not know Mr. William Dryden. This man that came in with Mr. Vaughn was a tall man, tall, slim man. You ask me if I would know him if I saw him again. I have already had an opportunity of meeting Mr. Dryden. They took me out to the railroad yards to identify him, to identify two or three of them. That is where I met him. I couldn't tell whether he was the man, or not. I am not positive whether he is, or not. You ask me if, as a matter of fact, that could be the man. I don't know. It might be. I don't know Mr. Dryden. I never recall cashing a

check for Mr. Dryden. [At this point Mr. Dryden was brought into the courtroom and then returned to the witness room.] The man who has just been in here does resemble the man that was in there [the liquor store] that day with Mr. Vaughn [the defendant]. That is what I told them when I went out there. I would not identify him as being the man that was with him. I am not positive. I know he was a tall man and had glasses on. He was slim. He fits his [Dryden's] description. You tell me that you exhibit to me another draft dated March 15, 1948, issued in the name of William L. Dryden, endorsed on the back by William L. Dryden, and underneath appears my name. That is my signature. I cashed that check for this man on that date. What date is that? You tell me it is dated March 15, 1948. I don't know whether I cashed that check for him, I don't remember. I remember I cashed that check for Mr. Dryden. You ask me if I also recall that Mr. Vaughn came in that same day. Was it March 15th or April 15th? You tell me that you are talking about March 15th. I don't know about that. You ask me if these checks [Southern Railway Company pay drafts] are not always two weeks late—in other words, March 15th checks are always cashed on the first of April, fifteen days later. I thought I deposited that check on April 15th. The check that I deposited on April 15th was dated March 31st. I received these checks two weeks later. I cashed the check dated March 15th, 1948, issued to James Troy Vaughn, the same date as the other one that you just exhibited to me. [The check payable to Dryden was dated March 15th and bore the stamp of the Atlanta Clearing House and the Citizens & Southern National Bank dated March 31, 1948; the check payable to James T. Vaughn bore the identical dates and stamp.] This check was cashed on the 31st day of March, 1948, and was issued on March 15th. *I did cash for Mr. Vaughn and for Mr. Dryden on the same day these two checks.* You ask me if that was on the 31st day of March, 1948. All I know—I mean when did I make a deposit? I didn't keep that check fifteen days. The one I cashed was on April 15th. I might have cashed other checks, too, in March. That was the payday before then. *All I know is that on April 15th I cashed this check on James A. Ellis and I went and got the money for it.* I didn't deposit it. I recall cashing a check

for Mr. Vaughn that same day. I had cashed a check for Mr. Vaughn the same day that I cashed this other check for Frank [?] Ellis, the same morning. That is what I recall. I mean to say that the day I cashed this check in the name of James A. Ellis I cashed a check the same day for Mr. Vaughn. You ask me how I recall so positively whether the check that I cashed when Mr. Vaughn was in there that day was the check of James A. Ellis or William L. Dryden. What I want to state is that I remember cashing a check for Mr. Vaughn that day and then cashing another check the same day from James A. Ellis. The way I remember that, both of them were large checks. I mean I didn't have enough money. I was waiting for the bank to open. I probably might have cashed a March 31st check for him. I used to cash his checks every payday. I mean the last two or three months. In other words, that is March 31st and other payday is April 15th. You understand what I mean. I say I remember it because it was two large checks at one time. That is the reason I remember cashing them in the name of Ellis, because it was a large check. [The Ellis check in question was for $128.73; the Dryden check was for $167.90; the March 15th check of Vaughn was for $140; the March 31st check of Vaughn, said to have been cashed at the time the Ellis check was cashed, does not appear in the record.] You tell me that the check that I cashed for Dryden was $167.90. I didn't cash this the same day I cashed the other one, did I? I did not cash that the same day that I cashed the check for Mr. Vaughn. This is March 15th and the other check is April 1st. I think. I mean I didn't cash a check for Mr. Vaughn on March 15th. This $140 check was a large check. When I cashed this check dated March 15th on March 31st I cashed another large check for Mr. Dryden for $167.90. The day I cashed it was March 31st, but the check I lost on was April 15th. The only reason that I say [I remember] that Mr. Vaughn was in there with that man is that I remember cashing two large checks that same day. I did cash two large checks on the same day two weeks prior to that on the 31st day of March. I say that it was a month or more from the time I cashed this check until it came back to me. *The check deal when I say Mr. Vaughn brought somebody in with him could have been this check on the 31st*

*day of March.* That is possible. I am not the one that cashed all the checks in there, but when they are big checks like that nobody else don't cash them. When I myself cash checks I always endorse them with my own signature. When I don't have enough money and go to get a check cashed I endorse it with my signature. When I put a stamp on it, that is for deposit. When they are this way (indicating), I go to the bank and I get the money because I don't have that much to keep going. On this particular occasion, I went and got the money. When I put the stamp on it, that is when I deposit it. You ask me if I specifically remember when I cashed these checks that day that Mr. Vaughn and this other gentleman were in there that I went over and got the money from the bank. The reason I know, I didn't have the money, and told them it was too much, but it was only half an hour more until the bank opened and told them, 'I will get along until I can go.' When the bank opened at 9 o'clock, I went down and got it. *You tell me to look at this check that has the stamp endorsement on the bottom of it rather than my signature. I deposited that check. You tell me that this [is] the check of James Troy Vaughn dated March 31st that was cashed by me on April 16th.* I did not cash this check which you show me; I deposited this check which you show me; I deposited this check. It is not true, as a matter of fact, that the transaction that I am referring to when Mr. Vaughn brought this other man in there, that I took these checks over to the bank and cashed them. I got the Frank [?] Ellis check. I went down and got the money. I don't know—I can't remember—I went down there. I needed the money. I probably didn't. I probably held the check or something. Maybe I just kept it for deposit, or I wasn't there and the fellow went down and got the money. When he sees checks in the register, when we are short of money, we just go down to the bank and get it cashed. In other words, I deposited the check for Mr. Vaughn when I went and got the cash money for Mr. Ellis' check. ·I deposited the check that I got from Mr. Vaughn on that date." (Emphasis and brackets supplied by the court.)

It would appear to be the position of the State that on April 15 the forged check was cashed by the prosecutor, Leo R. Amiel, at the request of the defendant, for a person unknown to Amiel,

and that, by virtue of the defendant's request that Amiel "cash my buddy's check," the defendant was a principal in the first degree and accomplice of the person who passed the forged check on Amiel. W think not. It appears from the evidence that the check had already been endorsed before it was presented to Amiel, as Amiel says that it was not endorsed in his presence. It does not appear that the defendant saw the check or the endorsement thereon when it was presented, or that he knew that there was a forged endorsement on the "buddy's check" which Amiel says was presented at that time. The jury by its verdict on count 1 found that the defendant did not endorse the check himself. The defendant contends that a transaction similar to the one which Amiel described in his testimony did occur, but that this occurred on March 31, not April 15, and the documentary evidence together with the oral testimony prove uncontrovertibly that the transaction described by Amiel did occur on March 31 and the transaction as first described did not occur on April 15. Amiel testified that on April 15 he cashed a check for the defendant and at his request cashed the Ellis check for the defendant's "buddy," and that *he endorsed the checks and cashed them within the hour at the bank*. The Ellis check shows that it was endorsed by Amiel and cashed at the bank on April 15. According to Amiel's testimony on cross-examination, the Vaughn check was not endorsed by him and cashed at the bank, but *the Vaughn check was stamped for deposit on April 16*. The Dryden check and the Vaughn check, both dated March 15, were both endorsed by Amiel and bore the bank stamp of March 31. We think that this testimony did not sufficiently connect the defendant with the forged check being cashed so as to warrant his conviction of guilty of uttering or passing a forged check. Even if the jury indulged in possibilities instead of probabilities and found that as a matter of fact the defendant did, on April 15, request Amiel to cash his buddy's check, which was the Ellis check, there is not the slightest intimation that the defendant knew that his buddy presented the Ellis check to be cashed, or that, if he knew the Ellis check was being presented, the defendant knew that the buddy had not come by the check legally. Neither the case of *Fincher* v. *State*, 42 *Ga. App.* 250 (155 S. E. 344), nor the case of *Jordan* v. *State*, 127 *Ga.* 278 (56 S. E. 422),

upon which the *Fincher* case relies, is in point. We commend the solicitor-general in his diligent prosecution of the case, and even though we should go so far as to speculate or surmise that the defendant may be guilty, yet our inescapable conclusion is that there is not sufficient evidence in this record, connecting the defendant with the perpetration of the offense of uttering a forged check, to warrant the verdict of guilty of that offense.

*Judgment reversed. Gardner and Townsend, JJ., concur.*